UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELISHA MERRITT,

            Petitioner,

  -vs-

JAMES BERBARY,

            Respondent.

_____

**DECISION AND ORDER**
**No. 10-CV-0958(MAT)**

## I. Introduction

Elisha Merritt ("Merritt" or "Petitioner") has filed a pro se habeas corpus application pursuant to 28 U.S.C. § 2254 alleging that he is being held in state custody in violation of his federal constitutional rights. Petitioner's state custody arises from a judgment of conviction entered on July 13, 2007, in Chemung County Court of New York State. Petitioner was convicted, based on his guilty plea, of Criminal Possession of a Weapon in the Third Degree (New York Penal Law ("P.L.") § 265.02(1)), and Criminal Sale of a Controlled Substance in the Third Degree (P.L. Law § 220.39(1)). Pursuant to the plea agreement, he was sentenced to an indeterminate sentence of two to four years for the weapons-possession conviction, to be served concurrently with a ten-year determinate sentence for the controlled substance conviction, and two years of post-release supervision.

**II.  Factual Background and Procedural History**

On November 8, 2006, in a parking lot on College Avenue in the City of Elmira, Petitioner sold cocaine to another individual. On November 28, 2006, Petitioner sold cocaine again at that same location. Petitioner was not arrested after these transactions. However, on December 23, 2006, Petitioner was arrested based on an incident in which he displayed a pistol. Two separate indictments followed, charging him with third degree criminal possession of a weapon, second degree menacing, unlawful possession of marihuana, tampering with physical evidence, seventh degree criminal possession of a controlled substance, and two counts of third degree criminal sale of a controlled substance.

On June 20, 2007, after conferring with counsel, Petitioner agreed to plead guilty to third degree criminal possession of a controlled substance and third degree criminal possession of a weapon, in full satisfaction of both indictments. In return for his guilty plea, Petitioner was promised a second-felony-offender indeterminate sentence of 2 to 4 years for the weapons-offense, to be served concurrently with a determinate ten-year prison sentence for the controlled substance offense, in addition to two years of post-release supervision. Additional facts concerning Petitioner's plea and direct appeal are discussed below.

Petitioner filed his initial habeas petition in this Court on November 21, 2010. By Order dated February 24, 2011, the Court

granted Petitioner leave to withdraw an unexhausted ineffective assistance of appellate counsel claim asserted in his initial petition and to file an amended petition (Docket No. 4). In his amended petition, Petitioner claims that his conviction should be vacated because (1) the prosecution committed a Brady[1] violation by not disclosing certain audiotape recordings of the drug sales; (2) Petitioner was denied his right to a speedy trial; (3) the grand jury returned indictments based on insufficient evidence; (4) defense counsel was ineffective because she did not (a) investigate the facts of Petitioner's case before recommending that Petitioner plead guilty, and (b) examine the audio recordings or documentation to verify whether it was Petitioner who made the drug sales; (5) Petitioner's plea was not knowingly and intelligently made; (6) the trial court committed misconduct because (a) it did not adequately inquire into Petitioner's claim that he did not trust his attorney and that she was not working in his best interest, (b) did not replace Petitioner's counsel, and (c) allowed the prosecutor to withhold exculpatory material, presumably the recordings pertaining to the drug sales; and (7) the Appellate Division failed to specifically address the points raised in Petitioner's pro se supplemental brief.

Respondent has opposed the petition on the merits and also has raised the defense of non-exhaustion. Petitioner, in his traverse,

---

[1] Brady v. Maryland, 373 U.S. 83, 87 (1963).

argues that he has fairly presented his claims to the state courts. The circumstances pertaining to the issue of exhaustion are rather unique. Because Petitioner's contentions are so plainly without merit, the Court, in the interest of judicial economy, addresses the substance of his claims instead of attempting to unravel the thornier questions of exhaustion and procedural default. See Mallet v. Miller, (citing Cox v. Miller, 296 F.3d at 101 (2d Cir. 2002)); see also See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

**III. Discussion**

    **A.   Constitutionally Invalid Guilty Plea**

A guilty plea operates as a waiver of important constitutional rights, and is valid only if done knowingly, intelligently, and voluntarily "'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). "[A] plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal." Bradshaw, 545 U.S. at 186 (citations omitted). Rather, a defendant may challenge the validity of his guilty plea only if can show either that he entered into the unfavorable deal due to constitutionally-defective advice from counsel or that he

could not understand the terms of the bargain. Id. (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973)).

To prevail on a claim of ineffective assistance of counsel, the defendant must meet the two-pronged standard of (1) showing that counsel's conduct falls below "an objective standard of reasonableness" under "prevailing professional norms" and (2) affirmatively proving prejudice, that is, demonstrating a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In the context of a guilty plea, the criminal defendant must also show a reasonable possibility that but for counsel's errors, the outcome would have been different-i.e., that he would not have pleaded guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence. Hill v. Lockhart, 474 U.S. 52, 59-60 (1985); accord Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008).

A court may ascertain that a defendant "knowingly" and "voluntarily" entered into the plea agreement from, among other things, his allocution statements. E.g., United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001). As such, statements made by a defendant at a plea allocution carry a "strong presumption of veracity." United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) (citing Blackledge v. Allison, 431 U.S. 63, 74

(1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.")).

After reviewing the transcript of Petitioner's plea hearing, the Court is convinced that Petitioner entered his guilty plea with an awareness of the rights he was waiving and the consequences of foregoing a trial. There is no indication that Petitioner has any cognitive defects or was not in possession of his faculties on the day of his plea. To the contrary, the record reveals that Petitioner presented himself as an intelligent young man.

The trial court ensured that Petitioner understood the terms of the plea offer. Defense counsel represented that she had spoken to Petitioner about the offer, and Petitioner confirmed that he had had sufficient time to confer with her. During the course of the plea allocution, Petitioner affirmed his understanding that by pleading guilty, he was giving up his privilege against self-incrimination, his right to confront and cross-examine the witnesses against him, and his right to present evidence and to testify on his own behalf. Petitioner also confirmed that no one had threatened him or coerced him into accepting the plea offer.

Although not required by due process, Petitioner's plea allocution also established that there was a factual basis for his plea. See Willbright v. Smith, 745 F.2d 779, 780 (2d Cir. 1984)

(stating that "due process does not mandate a factual basis inquiry by state courts") (citations omitted). Petitioner admitted that he possessed a .40-caliber Smith and Wesson semi-automatic handgun which he was not licensed to possess, and that he had previously been convicted of third-degree robbery on December 18, 2000. Petitioner also admitted that on November 8, 2006, he sold cocaine to another person in exchange for money.

Petitioner's contentions concerning defense counsel's performance-that she was ineffective because she did not adequately investigate the facts of the case before recommending that Petitioner plead guilty or examine the audio recordings to verify whether the seller recorded on the tapes was Petitioner-are without merit. First, Petitioner has not provided any particulars as to how counsel's investigation was deficient. Review of the record refutes this claimed lack of preparation.

The record indicates that a week before Petitioner's trial was to commence, counsel negotiated the early disclosure of discovery material, including various reports, as well as the grand jury testimony of certain police officers. With that information, defense counsel was in a position to intelligently advise Petitioner about his options when she discussed the plea offer with him. At no point during the plea proceedings did Petitioner complain that defense counsel refused to engage in sufficient

pre-plea investigation. Nor did petitioner raise such a complaint at his sentencing on July 13, 2007.

Given his lengthy criminal record, the plea agreement negotiated by counsel was favorable with regard to Petitioner's potential sentencing exposure. Counsel obtained an offer of 10 years determinate for a single cocaine sale, two years less than the maximum sentence applicable to that offense. It was agreed that the sentences for the two offenses to which Petitioner pled guilty would run concurrently. However, if Petitioner had been convicted after trial of all counts in the indictment, he risked much greater sentencing exposure because of his record and the potential for consecutive terms. Petitioner previously had convicted of third degree robbery, a Class D nonviolent felony. See N.Y. Penal Law § 70.02(1)(c). As a second felony offender, Petitioner thus was eligible to receive a determinate sentence ranging form 3½ to 12 years for each cocaine-related count alleged in the indictment. Because each drug sale constituted a separate incident, the trial judge could have imposed consecutive sentences for each conviction. See N.Y. Penal Law § 70.25. Additionally, the sentences could have run consecutively with any sentence imposed on the weapons-possession conviction. Thus, Petitioner, if convicted of all counts after trial, faced a possible sentence upwards of twenty-four years.

His second complaint-that his attorney failed to obtain the audio recordings-similarly lacks merit. Petitioner was fully aware at the time he pled guilty that if he accepted a plea, the chance to listen to the recordings was no longer available . Petitioner cannot dispute the prosecutor's willingnes to allow the defense the opportunity to listen to the tapes-however, the opportunity to plead guilty would no longer have been available once the recordings were disclosed. The prosecutor clearly informed all parties of this fact. As Respondent points out, Petitioner "bargained away" his right to hear the recording in order to accept the plea, and it is disingenuous for him to now claim that his attorney was ineffective for failing to obtain the recording before the plea was entered. Petitioner was well-aware that counsel could not listen to the recordings during plea negotiations because listening to the recordings would have ended any hope of a plea bargain.

In sum, Petitioner has not demonstrated that counsel's advice was objectively deficient or that, but for the alleged deficiencies, he would have insisted on proceeding to trial or would have obtained a more favorable sentence with another attorney. As the trial judge noted, the prosecution was able to, and could, "play hardball" given his lengthy record and the strength of their evidence. See Transcript of Hearing dated 6/8/07 at 7:1-11.

Petitioner received competent representation, and Petitioner made his decision to plead guilty voluntarily and with a full awareness of the relative risks and benefits of both options. His dissatisfaction with being imprisoned provides no basis to vitiate his constitutionally valid plea.

**B.   Alleged Violation of Brady v. Maryland**

In Brady v. Maryland, the Supreme Court held that a criminal defendant's due process rights encompass the obligation of the prosecution to produce evidence that is "material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). The evidence is considered material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Furthermore, the prosecution must fulfill this obligation even in the absence of a specific request from the defense. See Bagley, 473 U.S. at 682 (endorsing the Strickland test for materiality as applicable regardless of whether or not the defense makes a request).

Some district courts within the Second Circuit have opined that a defendant's right to receive Brady material cannot be waived, notwithstanding the existence of a valid guilty plea. Hill v. West, 599 F. Supp.2d 371, 388 n.3 (W.D.N.Y. 2009) (collecting cases). Assuming arguendo Petitioner's Brady claim survived his

knowing, voluntary, and intelligent guilty plea, it is without merit.

As discussed above, the prosecutor indicated, in response to Petitioner's demand to produce, that there were "recordings of controlled phone calls and of the subject transactions" and those recordings were "available upon request". Resp't Ex. A at 70. The record also makes clear that the prosecutor informed the court and Petitioner that because the recordings would disclose the identity of a confidential informant, the prosecutor would withdraw the plea offer if the recording was disclosed. As Respondent argues, Petitioner "made a calculated decision to waive his right to listen to the recording in order to accept the plea offer, and he cannot now complain that it was improperly withheld from him." Resp't Mem. at 28.

Moreover, Petitioner's claim that the records contained exculpatory or impeaching information within the meaning of Brady is based on pure conjecture. "It is well established that the mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief." Mallet v. Miller, 432 F. Supp.2d 366, 378 (S.D.N.Y. 2006) (citing Strickler v. Greene, 527 U.S. 263, 286 (1999) ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."); United States v. Avellino, 136 F.3d 249, 261 (2d Cir.1998) ("In the absence of a proffer by

[defendant] of any nonspeculative basis for inferring that . . . the government had not made available to him all pertinent material in its possession, it was well within the discretion of the court to conclude that no evidentiary hearing was necessary.")).

Indeed, the prosecutor specifically represented that they were "not aware of any exculpatory evidence in connection with this case" and that he would "comply" with the "dictates of Brady and its progeny". Resp't Ex. A at 79. The trial court was entitled to rely on the prosecution's representations that there was no Brady material. See, e.g., United States v. Perez, 940 F. Supp. 540, 553 (S.D.N.Y. 1996) ("Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to Brady where the Government, as here, has made a good-faith representation to the court and defense counsel that it recognizes and has complied with its disclosure obligations under Brady.").

Because Petitioner has not fulfilled any of the three prongs of the Brady standard, this claim must fail.

**C.   Denial of Right to Speedy Trial**

As Respondent argues, Petitioner's knowing, voluntary and intelligent guilty plea effected a waiver of his Sixth Amendment right to a speedy trial. See, e.g., Thye v. United States, 96 F.3d 635, 637 (2d Cir. 1996) (per curiam) (holding that guilty plea precluded speedy trial claim); United States. v. Coffin, 76 F.3d 494, 496 (2d Cir.), cert. denied, 517 U.S. 1147 (1996) ("Because a

defendant's right to a speedy trial is nonjurisdictional, a knowing and voluntary guilty plea waives a speedy trial claim unless the defendant specifically reserves the right to appeal.").

**D.    Defective Grand Jury Proceedings**

Petitioner contends that the evidence presented to the grand jury was legally insufficient to provide a basis for indictment. This claim is foreclosed by Petitioner's guilty plea, which "represents a break in the chain of events which has preceded it[.]" Tollett v. Henderson, 411 U.S. 258, 267 (1973). A defendant who admits his guilt in open court "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id.

The Supreme Court has explained "that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." Menna v. New York, 423 U.S. 61, 62 n. 2 (1975) (concluding that a guilty plea did not bar the petitioner's double jeopardy claim, as "the claim is that the State may not convict petitioner no matter how validly his factual guilt is established"). Therefore, a guilty plea "simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established." Id.

Petitioner's argument concerning the insufficiency of the evidence before the grand jury, unlike the claim raised in Menna, does not go to the constitutional permissibility of the state's initiation of proceedings against him or otherwise represent an argument that, had it been accepted before trial, "would forever preclude the state from obtaining a valid conviction against him, regardless of how much the state might endeavor to correct the defect," United States v. Curcio, 712 F.2d 1532, 1539 (2d Cir. 1983). Therefore, his claim concerning the grand jury proceedings does not survive his knowing, voluntary, and intelligent guilty plea on the underlying indictment. Accord, e.g., Sullivan v. Goord, No. 05-CV-6060L, 2007 WL 2746900, *9 (W.D.N.Y. Sept. 19, 2007) (adopting Report & Recommendation of Bianchini, M.J.) (citations omitted).

### E.  Judicial Misconduct

Petitioner contends that the trial judge engaged in misconduct because he did not adequately inquire into Petitioner's complaint that his lawyer was not trustworthy and was not working in his best interests; did not order substitution of assigned counsel; and allowed the prosecutor to withhold exculpatory material–presumably the audiotape recordings memorializing the drug sales with which Petitioner was charged. This claim is patently without merit and is refuted by the transcript of the proceedings.

Although the Sixth Amendment provides that in all criminal prosecutions a defendant shall enjoy the right to the assistance of counsel for his defense, "the right to choose one's own counsel is not absolute." United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) (citing Wheat v. United States, 486 U.S. 153, 159 (1988); Morris v. Slappy, 461 U.S. 1, 13-14 (1983) (the Sixth Amendment does not guarantee a "meaningful relationship" between defendant and counsel). Here, the judge inquired extensively into Petitioner's complaints in open court, allowed Petitioner to voice his complaints on the record, explained clearly how defense counsel was competently fulfilling her responsibility to represent him, and read his letter containing his complaints to make sure that they all had been aired. The "conflict" between Petitioner and his attorney was attributable to Petitioner's unrealistic expectations and certainly did not rise to the level warranting substitution of counsel.

This claim simply represents Petitioner's dissatisfaction with the judge's ruling denying him a new attorney. That decision, which was clearly correct as a matter of state and federal law, does not amount to judicial misconduct.

**F.   Denial of Due Process by the State Appellate Court**

Petitioner contends that the Appellate Division, Third Department violated his right to due process when it affirmed Petitioner's judgment of conviction. A brief summary of the law

-15-

concerning "Anders briefs" is necessary. Under Anders v. California, 386 U.S. 738, 744 (1967), if court-appointed appellate counsel for an indigent defendant finds his case to be wholly frivolous, he must advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief must be furnished to the defendant so that he may be given an opportunity to study the brief and raise other arguments pro se if he so chooses. People v. Cruwys, 113 A.D.2d 979 (App. Div. 3d Dept. 1985), lv. denied, 67 N.Y.2d 650 (N.Y. 1986).

If the appellate court finds that, based on the Anders brief, any appeal would be "wholly frivolous", it may "grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires." Anders, 386 U.S. at 744. "On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent [defendant] the assistance of counsel to argue the appeal." Id.

Here, Petitioner's first court-appointed appellate attorney filed an Anders brief, and sought to withdraw as counsel on the ground that there were no non-frivolous issues that could be raised

on appeal. In connection with that application before the Appellate Division, Petitioner filed a pro se supplemental brief raising the issues asserted in the present habeas petition. In response, the Appellate Division found that the appeal was not wholly frivolous and that there was at least one colorable issue-the harshness of Petitioner's sentence. People v. Merritt, 63 A.D.3d 1279, 1280 (App. Div. 3d Dept. 2009). (This issue was not among the arguments raised in Petitioner's pro se brief.) The Third Department accordingly appointed new counsel to brief an excessive sentencing claim "and any other [ ] [issues] that the record may disclose." Id. (ordering that the decision be withheld; counsel to be relieved of assignment; and new counsel to be assigned). The Third Department did not refer to any of Petitioner's pro se claims in this order or identify any other issues that had arguable merit.

When Petitioner's second court-appointed counsel filed his brief, he addressed only the sentencing claim identified by the Third Department and did not assert the claims previously raised in Petitioner's pro se supplemental brief. Petitioner himself did not reassert those claims in a new pro se submission.

The Third Department ultimately affirmed Petitioner's conviction, noting that it was "unpersuaded that the sentence imposed was harsh and excessive[.]" People v. Merritt, 73 A.D.3d 1332, 1333 (App. Div. 3d Dept. 2010). Since Petitioner's criminal history included another drug-related offense and robbery in the

first degree, and since the negotiated sentence was less than the maximum permitted and "substantially less than his sentencing exposure had he been convicted of all counts after trial", the Third Department declined to reduce the sentence. Id. (citations omitted). The court did not reference Petitioner's pro se claims in its decision, which can be read as containing an assumption that Petitioner was only challenging the severity of his sentence. Petitioner, however, believed otherwise submitted a pro se leave application to the Court of Appeals, asserting all of the issues he had included in his pro se supplemental brief.

Petitioner now argues that the Third Department's failure to specifically reference his pro se claims in its final order affirming his conviction amounted to a denial of due process. Petitioner has not supported his position with legal precedent, and, indeed, the Court's research into this issue failed to uncover any. Neither due process nor any other constitutional provision obligates a state appellate court to explicitly address each of a defendant's claims in the decision and order disposing of the appeal. Cf., e.g., Dallio v. Spitzer, 343 F.3d 553, 560 (2d Cir. 2003) ("[T]o qualify as an adjudication 'on the merits,' a state court decision need not mention a particular argument or explain the reasons for rejecting it."), cert. denied, 541 U.S. 961 (2004). Moreover, none of Petitioner's pro se claims would have warranted relief under New York state law. The Third Department had occasion

-18-

to consider them when he filed his follow-up brief to counsel's <u>Anders</u> brief, but it did not instruct new appellate counsel to brief any of the issues raised by Petition. Thus, the Third Department implicitly rejected them as lacking in arguable merit. <u>See</u> <u>People v. Merritt</u>, 63 A.D.2d at 1280 ("There is at least one issue of arguable merit pertaining to the severity of the sentence."). In short, Petitioner received all the process he was due in connection with his direct appeal.

**IV. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Under F<small>ED</small>. R. A<small>PP</small>. P. 3(c)(1), the notice of appeal must (1) specify

the party taking the appeal in the caption or body of the notice; (2) designate the judgment, order, or part thereof being appealed; and (3) name the court to which the appeal is taken.

**IT IS SO ORDERED.**

                                    S/Michael A. Telesca

                                _____
                                HONORABLE MICHAEL A. TELESCA
                                United States District Judge

DATED:     January 9, 2012
          Rochester, New York

the party taking the appeal in the caption or body of the notice; (2) designate the judgment, order, or part thereof being appealed; and (3) name the court to which the appeal is taken.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     January 9, 2012
           Rochester, New York